FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 13, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CHARLES J.,

　　　　　　　Plaintiff,

　　v.

COMMISSIONER OF SOCIAL
SECURITY,

　　　　　　　Defendant.

No.　1:19-cv-03028-SMJ

**ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING THE
COMMISSIONER'S MOTION
FOR SUMMARY JUDGMENT**

　　　　Before the Court, without oral argument, are the parties' cross-motions for summary judgment, ECF Nos. 18, 19. Plaintiff Charles J. appeals the Administrative Law Judge's (ALJ) denial of his application for Supplemental Security Income (SSI) and Disability Insurance (DI) benefits. Plaintiff alleges the ALJ (1) improperly failed to obtain medical expert testimony, (2) failed to assess Plaintiff's cervical radiculopathy, carpal tunnel syndrome, and hernia as severe impairments, (3) improperly discounted or dismissed medical opinions, and (4) improperly discounted Plaintiff's symptom testimony. ECF No. 18. The Commissioner of Social Security ("Commissioner") asks the Court to affirm the ALJ's decision. ECF No. 19.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY
JUDGMENT – 1

Upon reviewing the administrative record, the parties' briefs, and the relevant authority, the Court is fully informed. For the reasons set forth below, the Court finds the ALJ committed reversible errors. Although these errors invalidated the ALJ's conclusion that Plaintiff did not qualify for benefits prior to April 8, 2017, Plaintiff's entitlement is not clear from the face of the record. Accordingly, the Court grants Plaintiff's motion for summary judgment, denies the Commissioner's motion for summary judgment, and remands for further proceedings.

## BACKGROUND[1]

Plaintiff applied for SSI benefits on August 26, 2014 and applied for DI benefits on September 25, 2016. AR 318–30.[2] The Commissioner denied Plaintiff's application on November 12, 2014, *see* AR 124–39, and denied it again on reconsideration, *see* AR 142–53. At Plaintiff's request, a hearing was held before ALJ Jesse Shumway. AR 38–74. The ALJ denied Plaintiff benefits on April 4, 2018. AR 12–37. The Appeals Council denied Plaintiff's request for review on December 20, 2018. AR 1–6. Plaintiff then appealed to this Court under 42 U.S.C. §§ 405(g), 1383(c)(3). ECF No. 1.

---

[1] The facts, thoroughly stated in the record and the parties' briefs, are only briefly summarized here.

[2] References to the administrative record (AR), ECF No. 8, are to the provided page numbers to avoid confusion.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 2

# DISABILITY DETERMINATION

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision-maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision-maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not, the disability claim is denied. If the claimant does, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment does not, the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY
JUDGMENT – 3

evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past by examining the claimant's residual functional capacity, or RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987). If the claimant can, the disability claim is denied. If the claimant cannot, the disability claim is granted.

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The burden then shifts to the Commissioner to show (1) the claimant can perform other substantial gainful activity, and (2) that a "significant number of jobs exist in the national economy," which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experiences, engage in any other

substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**ALJ FINDINGS**

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 19.

At step two, the ALJ found that Plaintiff had three medically determinable severe impairments: dysfunction of major joints, spine disorders, and affective disorders. *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. AR 21.

At step four, the ALJ found that Plaintiff had an RFC sufficient to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with the following limitations: "[Plaintiff] can lift and carry twenty pounds occasionally and ten pounds frequently, and can stand and walk for a total of five hours in an eight-hour day, or work at tasks that permit a sit/stand option, and can sit for a total of six hours in an eight-hour day, with normal breaks[]. He can frequently stoop, occasional[ly] kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, or scaffolds, and must avoid concentrated exposure to extreme cold, vibration, and hazards such as dangerous machinery, etc. There may be occasional lapses in concentration,

persistence, and pace as a result of ongoing mental symptoms, however, [Plaintiff is] able to work at a reasonable pace with regular and customary breaks. [Plaintiff is] not able to perform at a production rate pace (e.g. assembly line work as where the pace is mechanically controlled) but can perform goal oriented work or where the worker has more control over the pace. There should be no contact with the general public for primary work tasks but incidental contact is not prohibitive. There can be frequent contact with coworkers. [Plaintiff] may be off task about 10% over the course of an eight-hour day." AR 22–23.

In reaching this determination, the ALJ gave significant weight to the opinions of state medical consultant Leslie Arnold, M.D., as well as state agency psychological consultants Thomas Clifford, Ph.D. and James Bailey, Ph.D. *Id.* at 26–27. The ALJ gave little weight to the opinion of Jeremiah Crank, M.D., and limited weight to the opinion of Trula Thompson, M.D. *Id.* at 27–28. The ALJ gave no weight to the opinions of Brent Packer, M.D., or examining psychologist Thomas Genthe, Ph.D. *Id.*

At step five, the ALJ found Plaintiff could not perform any past relevant work but that prior to April 8, 2017, Plaintiff could perform other jobs existing in the national economy including small products assembler, inspector and hand packager, and electrical accessories assembler. *Id.* at 28–30. The ALJ found that on April 8, 2017, Plaintiff's age category changed, and beginning on that date, Plaintiff

could perform no jobs that exist in significant numbers is the national economy. *Id.* at 30.

## STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record, considered as a whole, to support the ALJ's decision. *Molina v. Astrue,* 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 1110 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla but may be less than a preponderance. *Id.* at 1110–11 (citation omitted). If the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court will not reverse an ALJ's decision if the errors committed by the ALJ were harmless. *Molina*, 674 F.3d at 1111 (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

# ANALYSIS

## A.    The ALJ erred in failing to obtain medical expert testimony

Plaintiff first alleges the ALJ erred by failing to obtain expert medical opinion because the alleged onset date was not clear from the record. ECF No. 18 at 4. The Commissioner argues that because the date of onset of disability was determined by Plaintiff entering a new age group and not a change in RFC, which the ALJ found to be consistent throughout the period at issue, the record was not lacking or ambiguous and medical expert testimony was unnecessary. ECF No. 19 at 2–3.

"[W]here a record is ambiguous as to the onset date of disability, the ALJ must call a medical expert to assist in determining the onset date." *Armstrong v. Comm'r Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998). This "most readily applies when an incomplete record clearly could support an inference that a claimant's disability began when there were no contemporaneous medical records." *Wellington v. Berryhill*, 878 F.3d 867, 873–74 (9th Cir. 2017) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 851 (9th Cir. 1991) (holding "the ALJ must fully develop the record" when first examination by psychiatrist documented "long term functional nonpsychotic disorder" preventing the claimant from working)). However, a medical expert's assistance is not required when the available evidence clearly could not support an inference of disability onset during a gap in medical records. *Wellington*, 878 F.3d at 874.

Plaintiff's alleged onset date is December 1, 2012, but his first medical record is a physical function evaluation from September 16, 2013. AR 398–406, 619–27. The record from this evaluation reflects Plaintiff's hernia had been ongoing for two years, supporting an inference of onset of disability during the period for which there are no records. AR 403–04. Both when rejecting Plaintiff's hernia as a severe impairment at step two and in discounting Dr. Crank's 2013 opinion, the ALJ relied on the fact that the hernia was repaired in December 2013 and concluded it did not significantly limit his ability to perform basic, work-related activities for a continuous twelve-month period. AR 20, 27. These determinations regarding the duration of the hernia were "mere speculation without the aid of a medical expert" and so refusing to call an expert to assist in making this determination was reversible error. *See Diedrich v. Berryhill*, 874 F.3d 634, 639 (9th Cir. 2017).

Plaintiff's responses to a September 2013 questionnaire showed signs of mild depression, though he did not exhibit depression or anxiety during the exam. AR 403–04. However, because the court finds that the ALJ did not err in rejecting Dr. Genthe's opinion regarding Plaintiff's mental health, the RFC determination as it relates to Plaintiff's limitations caused by his affective disorder was not in error. As such, the ALJ's decision that Plaintiff's onset date with regard to his affective disorder resulted from Plaintiff's change in age category, rather than change in RFC. This conclusion therefore required no medical expert testimony and the ALJ

did not err in this regard. *See Lacquaye v. Colvin*, No. 1:15-CV-3029-TOR, 2015 WL 6738770, at *9 (E.D. Wash. Nov. 4, 2015) (finding no error where onset of disability operated by change in claimant's age category).

Documentation of Plaintiff's neck and back pain first appear later in Plaintiff's medical records, first in a November 2014 record, and could not support an inference of disability in the period for which medical records do not exist. As discussed below, as of 2014, Plaintiff had only inconsistently reported back pain, and in the first medical record available, Plaintiff specifically denied back pain. AR 403, 410 & 454. As such, the ALJ's determination as to the onset date of disability related to neck and back pain did not require a medical expert's input, and on remand the ALJ need only obtain medical expert testimony related to the onset of Plaintiff's hernia to determine whether the hernia lasted for a period of more than twelve months.

**B.    Any error in failing to find Plaintiff's hernia, cervical radiculopathy, and carpal tunnel syndrome was harmless**

Plaintiff contends the ALJ's determination that his hernia, cervical radiculopathy, and carpal tunnel syndrome were not severe impairments at step two was in error. ECF No. 18 at 4. The Commissioner contends that substantial evidence supports the ALJ's step two finding and that, because the ALJ found in Plaintiff's favor at step two, any error was harmless. ECF No. 19 at 3–4.

Step two is a threshold determination to screen out weak claims. *Bowen v. Yuckert*, 482 U.S. 137, 146–47 (1987). The ALJ must consider all symptoms, whether from conditions found to be "severe" at step two or otherwise, when assessing RFC. *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017). Here, because the ALJ's step two analysis was favorable to Plaintiff and the ALJ considered all of Plaintiff's impairments and symptoms in determining his RFC, any error in failing to find that specific impairments were not severe was harmless. *See Buck*, 869 F.3d at 1048.

**C.    The ALJ erred in discounting the 2013 and 2016 opinions of Dr. Crank, M.D. and the 2016 opinion of Dr. Packer, M.D. but did not err in rejecting the opinion of Dr. Genthe, Ph.D.**

Plaintiff argues the ALJ erred by giving little weight to the opinion of treating physician Jeremiah Crank, M.D., and no weight to the opinions of non-examining physician Brent Packer, M.D. and examining psychologist Thomas Genthe, Ph.D. ECF No. 18 at 9. The Commissioner argues the ALJ reasonably weighed these medical opinions. ECF No. 19 at 6.

For SSI appeal purposes, there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (non-examining physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201–02 (9th Cir. 2001). Generally, a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 11

treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.*

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only for "clear and convincing reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216. "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d 821, 830–31).

## 1. The ALJ erred in discounting Dr. Crank's 2013 opinion

The ALJ gave little weight to Dr. Crank's opinions overall and appears to have completely rejected Dr. Crank's 2013 opinion regarding Plaintiff's limitations because the hernia did not meet the durational requirement. AR 27. As discussed above, the ALJ's determination that Plaintiff's hernia did not meet durational requirements, without the assistance of a medical expert, was in error. Dr. Crank's opinion regarding Plaintiff's limitations as of 2013 is not contradicted by another

doctor,[3] and this basis for rejecting it is neither clear and convincing nor supported by substantial evidence. *See Bayliss*, 427 F.3d at 1216. On remand, the ALJ shall re-evaluate this opinion based on any inferences of onset date the medical expert may be able to provide. *See Diedrich*, 874 F.3d at 640–41 (holding that even where medical advisor may not be able to identify specific onset date, ALJ should consider testimony of medical advisor to exercise informed judgment).

## 2. The ALJ did not err in discounting Dr. Crank's 2014 opinion

The ALJ gave little weight to Dr. Crank's 2014 opinion that Plaintiff was limited to sedentary work because those opinions were inconsistent with Dr. Crank's own records. AR 27. This was a specific and legitimate reason supported by substantial evidence. *See Bayliss*, 427 F.3d at 1216. Specifically, prior to the November 2014 opinion, Plaintiff informed Dr. Crank that he did not have back pain in September 2013, November 2013, or August 2014. AR 403, 410 & 454. This was clearly inconsistent with Dr. Crank's 2014 opinion that Plaintiff had significant neck and back pain for over four years. AR 433. Plaintiff cites no authority for the proposition that reporting a lack of back pain when being treated

---

[3] Dr. Arnold, a state medical consultant, did not opine as to any limitations owing to Plaintiff's hernia and rejected Plaintiff's DI claim on the grounds that there was no evidence dating back to the date last insured. AR 108–11. As such, it appears Dr. Arnold also did not consider the possibility that Plaintiff's hernia condition resulted in limitations prior to the first medical evidence in September 2013.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 13

for a condition other than back pain renders that report irrelevant to the issue of whether a claimant actually was experiencing back pain at the time.

### 3. The ALJ erred in discounting the 2016 opinions of Dr. Crank and Dr. Packer

The ALJ also gave little weight to Dr. Crank's 2016 opinion related to limitations imposed by cervical and lumbar radiopathy and left knee pain because it was inconsistent with minimal physical examination findings, minimal observations of Plaintiff in discomfort, and the minimal treatment claimant sought or received. AR 27. The ALJ gave no weight to the opinion of non-examining physician Dr. Packer, M.D. because he relied on Dr. Crank's 2016 opinion. AR 28. The reasons given by the ALJ for rejecting these opinions are specific and legitimate, but they are not supported by substantial evidence. *See Bayliss*, 427 F.3d at 1216.

For example, at the November 2015 assessment for which the ALJ noted Plaintiff merely "demonstrated some reduced range of motion and antalgic gate," Plaintiff was also provided with a prescription for Percocet, provided with crutches, and scheduled for surgery. AR 490–91. The ALJ noted that treatment providers documented a normal range of motion after Plaintiff's knee surgery, but the record the ALJ cited to support only contains a general "lower extremity exam" that does

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 14

not contain a record of any doctor specifically inspecting Plaintiff's knees.[4] AR 25, 537. Similarly, the record the ALJ cited to support the proposition that a June 2016 examination of Plaintiff's knee showed "minimal findings . . . including normal strength in the lower extremities bilaterally and no atrophy" also showed a reduced and painful range of motion, tenderness, mild crepitation on the left knee, and that Plaintiff walked with a limp on the left side. AR 576.

The ALJ also does not appear to have supported his finding that there were minimal physical examination findings in rejecting Dr. Crank's opinion on Plaintiff's cervical and lumbar radiopathy. *See* AR 24–25. The ALJ's discussion on minimal physical examination findings cites a November 2014 examination that noted positive findings in Plaintiff's neck and back but found Plaintiff's strength and sensation was normal in all extremities. AR 24. The ALJ also noted a March 2016 examination reflecting a reduced range of motion. *Id.* The ALJ went on to reject both examination findings because both were related to Plaintiff's state disability benefits claims and other physical examination records showed minimal findings. *Id.* However, the ALJ did not cite to such records in support of this

---

[4] The record the ALJ referenced was treatment for an abscess related to an ingrown hair. AR 25, 537. This record reflects normal results of a physical exam, including that a lower extremity exam included normal range of motion and indicated Plaintiff appeared pain-free, both of which might be relevant. AR 536–39. But this record does not include any record of a specific inspection of Plaintiff's knees. *See id.*

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 15

proposition and an independent review of the record does not reveal findings that could be described as minimal. For example, in June 2016, Plaintiff had "decreased sensations to sharp" in L3-L4 and was instructed to be assessed for left lumbar radiopathy. AR 576. In August 2016, a physical examination showed pain elicited by motion, limited spinal rotation, multiple absent reflexes, and decreased sensations. AR 554.

Further, the ALJ's opinion that, had Plaintiff experienced "constant and disabling pain," his treatment providers would have noted acute distress does not support giving limited weight to Dr. Crank's opinion concerning Plaintiff's limitations. *See Ekola v. Colvin*, Case No. 2:13–cv–1812–HRH, 2014 WL 4425783, *6 (D. Ariz. Sept. 9, 2014) (rejecting proposition that lack of medical notes of acute distress was basis for discounting claimant's testimony because "in a medical context 'acute' means 'having a rapid onset, severe symptoms, and a short course; not chronic.'" (quoting *Taber's Cyclopedic Medical Dictionary* A-32 (13th ed. 1977)). Finally, as discussed below, Plaintiff's failure to seek treatment was not a proper reason for rejecting Dr. Crank's opinion. As such, the ALJ erred in rejecting Dr. Crank's 2014 and 2016 and Dr. Packer's 2016 opinion.

### 4. The ALJ did not err in rejecting Dr. Genthe's opinion

The ALJ gave no weight to Dr. Genthe's September 2014 evaluation of Plaintiff on the grounds that Dr. Genthe did not provide a basis for his opinions and

because those opinions were inconsistent with Dr. Genthe's narrative summary. AR 27–28.

Dr. Genthe opined that Plaintiff was severely limited in his ability to complete a normal workday and workweek or maintain appropriate behavior in a work setting. AR 423. Dr. Genthe also opined that Plaintiff was markedly limited in his ability to communicate and perform effectively in a work setting. *Id.* However, the ALJ correctly noted that nothing in Dr. Genthe's narrative supports these propositions and that Dr. Genthe's narrative summary presents descriptions of Plaintiff's capacities that are inconsistent with these findings. AR 27–28, 423–28. The ALJ also correctly noted Dr. Genthe's opinion was inconsistent with minimal observations of psychiatric symptoms[5] and Plaintiff's performance on mental health examinations,[6] and the ALJ cited to specific portions of the record in support of these findings. AR 25, 27–28.

---

[5] Of note, many of the observed psychiatric symptoms were reported long after Dr. Genthe's 2014 opinion. *See* AR 693–94, 702, 719.

[6] Plaintiff correctly notes that the record does contain mental health examination findings that would support Dr. Genthe's opinion. ECF No. 18 at 16–17. However, the record also contains inconsistent records that support the ALJ's determination. AR 425–26 (finding plaintiff within normal limits of all tests), 681, 687 (normal memory). The ALJ also specifically rejected the Global Assessment of Functioning score that Plaintiff relies on, indicating it was inconsistent with other findings and Plaintiff's own self-reported activities. AR 28. This Court need not agree with the ALJ's decision to reject Dr. Genthe's opinion as long as that decision was supported

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING THE COMMISSIONER'S MOTION FOR SUMMARY JUDGMENT – 17

The ALJ also rejected Dr. Genthe's opinion because of Plaintiff's minimal mental health treatment. AR 28. "[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). However, even if the Court were to reject this reason for discounting Dr. Genthe's opinion, the ALJ still provided specific and legitimate reasons supported by substantial evidence and did not commit reversible error.

In sum, the ALJ committed reversible error in rejecting Dr. Crank's 2013 and 2016 opinions and Dr. Packer's 2016 opinion but did not err in rejecting Dr. Crank's 2014 opinion or Dr. Genthe's 2014 opinion.

**D.    The ALJ on remand should consider Plaintiff's subjective symptom testimony with regards to his hernia, cervical and lumbar radiopathy, and left knee pain**

Finally, Plaintiff assigns error to the ALJ's decision to discount Plaintiff's own subjective symptom testimony. ECF No. 18 at 19–21. The Commissioner contends the ALJ properly discounted Plaintiff's symptom testimony because it was inconsistent and incompatible with Plaintiff's self-reported level of activity. ECF No. 19 at 4–6.

---

with specific and legitimate reasons and supported by substantial evidence. *Bayliss*, 427 F.3d at 1216.

Where a claimant presents objective medical evidence of impairments that could reasonably produce the symptoms complained of, an ALJ may reject the claimant's testimony about the severity of his symptoms only for "specific, clear and convincing reasons." *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014). The ALJ's findings must be sufficient "to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). General findings are insufficient. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). In evaluating the claimant's credibility, the "ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Bray*, 554 F.3d at 1227. The Court may not second guess the ALJ's credibility findings that are supported by substantial evidence. *Tommasetti*, 533 F.3d at 1039.

The ALJ rejected Plaintiff's symptom testimony for largely the same reasons the ALJ discounted the medical opinions. *See* AR 23 ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision."); AR 24–26 (discussing inconsistent statements to treating providers, minimal physical examination findings, lack of observations of claimant in distress or discomfort, minimal observations of psychiatric difficulties, performance on mental status examinations, and minimal treatment). For the reasons discussed above, the ALJ's determination

that there were minimal physical examination findings related to Plaintiff's cervical and lumbar radiopathy was not supported by the record. The ALJ's reasons for rejecting Plaintiff's testimony based on a lack of observations of claimant in distress and minimal mental health treatment are not legitimate reasons, which is a lower standard than clear and convincing reasons.

Further, inconsistent reports of positive mental health symptoms outside the context of treatment, remission, or overall improvement will not support rejecting a claimant's testimony as to their mental health symptoms. *See Garrison v. Colvin*, 759 F.3d 995, 1018 (9th Cir. 2014) (finding ALJ erred by "improperly singl[ing] out a few episodes of temporary well-being from a sustained period of impairment"). On remand, the ALJ shall reevaluate the determination that Plaintiff's subjective symptom testimony was not fully supported by the record.

**E.    Remand, rather than an award of benefits, is appropriate**

In light of the errors identified above, further proceedings are clearly necessary. Though there is certainly substantial evidence to support Plaintiff's entitlement to benefits, that conclusion is not "clear from the record." *Garrison*, 759 F.3d at 1019. Accordingly, the Court remands this matter to the ALJ for further proceedings consistent with this Order, rather than simply awarding benefits.

//

//

# CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

3.    The Clerk's Office shall **ENTER JUDGMENT** in favor of **PLAINTIFF** and thereafter **CLOSE** the file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 13th day of March 2020.

_____
SALVADOR MENDOZA, JR.
United States District Judge